HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MILES MONAHAN; DALE HOUSDEN;
DAVID ROBERTS; JIM MUMFORD;
CALVIN LUKKEN; BRADLEY PORTER;
JAY EVENSON; AARON JESSOP;
MICHAEL SWIHART; and DARREN
WISHARD,

Plaintiffs,

v.

EMERALD PERFORMANCE
MATERIALS, LLC, a foreign corporation,

Defendants.

Case No. 08-1511RBL

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment [Dkt. #31], Plaintiffs' Motion for Partial Summary Judgment [Dkt. #40], and Defendant's Motion for Summary Judgment Regarding State Law Claims [Dkt. #39]. The Court has reviewed the materials for and against each motion, and has heard oral argument. For the reasons stated below, Defendant's Motion for Summary Judgment on the basis of preemption of state law claims [Dkt. #31] is **DENIED**. Plaintiffs' Motion for Partial Summary Judgment [Dkt. #40] is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion for Summary Judgment regarding state law claims [Dkt. #39] is **GRANTED IN PART AND DENIED IN PART**.

ORDER
Page - 1

# **BACKGROUND**

Plaintiffs are defendant's employees, working at defendant's chemical plant facility in Kalama, Washington. All plaintiffs have been employed at the Kalama plant for more than three years before the date that the complaint was filed, October 10, 2008. Plaintiff Monahan entered into a tolling agreement with defendant allowing Monahan to potentially collect damages dating back to September 9, 2005; none of the other plaintiffs entered into any tolling agreements and cannot collect damages that accrued more than three years before October 10, 2008.

Defendant Emerald Performance Materials, LLC ("Emerald") is an Ohio corporation. At all relevant times, Emerald was authorized to conduct and was conducting business in Washington. On May 7, 2006, Emerald purchased and began operating the Kalama plant. The purchase terms were documented in an "Asset Purchase Agreement," which also included purchase terms of several other plants in addition to the Kalama plant. When it purchased the Kalama plant, Emerald agreed to assume a limited amount of liability for payroll issues relating to all employees, including plaintiffs. Each plaintiff filled out weekly time sheets noting the number of hours and shifts worked. Defendant kept accurate records and based the plaintiffs' weekly pay on the time sheets.

Plaintiffs were members of a union. The terms and conditions of their employment, including method of pay, were governed by a Collective Bargaining Agreement ("CBA"). Emerald assumed the CBA's obligations, which were in place when the plant was purchased. Emerald continued to pay all employees, including plaintiffs, according to the terms of the CBA.

The CBA was set to expire in May 2008. Preparing to negotiate a new CBA, Emerald's management team noted that the existing Article 17A, regarding the method of pay provision relating to twelve-hour shift employees. Emerald's management questioned outside counsel as to whether Article 17A complied with the overtime provisions of the wage and hour laws.

Under Article 17A of the CBA, employees scheduled to work twelve-hour shifts received the

same fixed amount of weekly pay, regardless of the number of hours they actually worked in that week:

> The basis of the 12-hour shift schedule is to work 240 hours over a six week schedule and average 40 hours a week. In actual hours, an employee might work 36 hours one week, 48 the next, 24 the next, etc. Although an employee's 20 days that they actually are scheduled may change during a six week period (to cover personal holidays, etc.) it must balance out to 40 hours during the six week period. Since the hours are averaged, for pay purposes, the employee will be paid 40 hours pay per week average wage.

Twelve-hour shift employees would work 240 hours in a six-week scheduling cycle. Thus, 12-hour shift employees would be "overpaid" in some weeks, and "underpaid" in others compared to what they would have received had they been paid on an hourly basis for each scheduled hour actually worked in a work week.

Unlike Article 17A, the wage and hour laws (both federal and state) look at each work week separately for overtime pay purposes. Under the wage and hour laws, if an employee works more than forty hours in one week, overpayments in one work week cannot entirely offset overtime due in another week.

Immediately after discovering the potential violation in overtime pay for twelve-hour shift employees, Emerald, through counsel, reported the potential overtime pay violation to the U.S. Department of Labor, Wage and Hour Division, in Ohio (where Emerald is headquartered). After investigation, the Department of Labor determined that a violation occurred. On May 27, 2008, the Department filed a complaint in U.S. District Court for the Northern District of Ohio seeking to enjoin Emerald from continuing to violate the Fair Labor Standards Act ("FLSA") and from continuing to withhold overtime compensation due to eighty-eight (88) employees, including all ten plaintiffs in this matter, who worked twelve-hour scheduled shifts and were paid according to Section 17A of the CBA.

The Department of Labor reviewed Emerald's time and payroll records to calculate the amount of overtime back wages due. The Department of Labor determined that Article 17A of the CBA provided for payments of a fixed weekly amount of compensation regardless of the number of hours worked in any

particular work week. The Department of Labor and Emerald entered into a Consent Judgment that enjoined Emerald from violating the overtime provisions of the FLSA and further required Emerald to tender payment to each of the subject employees in an individual amount listed in the Consent Judgment. The total amount tendered was $241,308. On July 29, 2008, U.S. District Judge Lioi entered the Consent Judgment, which set forth the specific amount of back wages due and owing to each employee.

Plaintiffs and all other employees affected by the Secretary's lawsuit in Ohio did not receive notice of the lawsuit, did not participate in any way in the lawsuit, did not have standing to appeal the Consent Judgment and did not have knowledge of the lawsuit until sometime after the defendant began distributing checks for unpaid overtime wages to them in August 2008.

Seventy-eight (78) employees listed in the Consent Judgment accepted the overtime back wages tendered to them. The ten plaintiffs in this case rejected the tendered amounts. On October 10, 2008, plaintiffs filed this lawsuit seeking overtime compensation under both the Federal FLSA and the Washington Minimum Wage Act (MWA). Plaintiffs are claiming back wages commencing in October 2005, before Emerald became the plaintiffs' employer. Plaintiffs claim that Emerald has "successor liability." Plaintiffs allege at paragraph 8 of their complaint that the Department of Labor in the Ohio action did not properly calculate the overtime back wages due.

## **PRIOR COURT ACTION**

On April 22, 2009, this Court dismissed plaintiffs' claim under the FLSA because it was barred by the Secretary's prior filing of the FLSA § 217 action. Similarly, the plaintiffs' federal claim for liquidated damages (double damages) was also barred by the Secretary's filing of the § 217 action in Ohio. [Dkt. #27].

## **CURRENT MOTIONS**

The plaintiffs' only remaining claims are the state law claims under RCW 49.46.090 et. seq. Defendant has moved to dismiss or alternatively for summary judgment on the ground that plaintiffs' state

law claim to recover unpaid overtime wages, double damages, costs and attorney fees are preempted by § 301 of the Labor Management Relations Act (LMRA). The plaintiffs also seek partial summary judgment regarding the proper method for calculating their unpaid overtime wages, for an order finding defendant liable for double damages, and for an order finding that defendant has successor liability, which would lengthen the statute of limitations from two years to three years from the date that the complaint was filed. Defendant has moved for summary judgment on the issue of *res judicata*, as well as the proper method of calculating overtime pay, and a ruling that it is not liable for double damages.

## **SUMMARY JUDGMENT AND RULE 12(b)(6) STANDARDS**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Review is limited to the content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96

F.3d 1204, 1207 (9th Cir. 1996). Under *Bell Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to avoid dismissal under this Rule. He must instead "provide the grounds of his entitlement to relief, which requires more than labels and conclusions." 550 UJ.S. 544, 555 (2007). The litigant must plead a claim that moves "across the line from conceivable to plausible." *Id*. at 570.

## DISCUSSION

Emerald argues that it owes no additional overtime to plaintiffs because plaintiffs received the full amount of overtime owed to them as part of the Department of Labor's prior lawsuit on behalf of plaintiffs. Emerald further argues that the plaintiffs' state law claims are identical to the claims adjudicated in the prior Department of Labor lawsuit or are *de minimus*. Emerald claims that it does not owe plaintiffs any additional overtime because the regular rate of pay calculation methodology that plaintiffs are asking the Court to adopt is inconsistent with the facts in this case and the applicable state and federal law. Under Emerald's theory, the amount of overtime compensation tendered to plaintiffs as a result of the Department of Labor's prior lawsuit is the same amount of overtime owed under the Washington Minimum Wage Act (MWA). Emerald argues that plaintiffs' state law claims are therefore barred by either the doctrine of *res judicata* or the doctrine of collateral estoppel, or both. The Court's earlier ruling does not, however, foreclose the plaintiffs' state law claims, even where, as here, the relevant language of the federal and state statutes is identical.

### 1. *Res Judicata*/**Collateral Estoppel.**

Collateral estoppel, or issue preclusion, prevents re-litigation of an issue "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Amadeo v. Principal Mutual Life Insurance Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002). *Res judicata*, or clam preclusion, bars re-litigation of a claim if a court has reached a final judgment on that claim in a previous action involving the same parties or their privies. *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994).

Under both doctrines, federal courts generally require that:

(1) the claim or issue decided in the prior adjudication is identical to the claim or issue in the present action;

(2) the prior adjudication resulted in a final judgment on the merits; and

(3) the party against whom collateral estoppel or *res judicata* is asserted was a party or in privity with a party to the prior adjudication.

*See Sidhu v. Flecto Co., Inc.* 279 F.3d 896, 900 (9th Cir. 2002) (describing *res judicata* requirements); *Maciel v. Comm'r of Internal Revenue*, 489 F.3d 1018, 1023 (9th Cir. 2007) (describing collateral estoppel requirements).

Unlike *res judicata*, collateral estoppel does not prohibit a party from litigating issues that were never argued or decided in the prior proceeding. *Sea-Land Servs. v. Gaudet*, 414 U.S. 573, 593, 94 S.Ct. 806, 39 L. Ed. 2d 9 (1974). Thus, collateral estoppel has two additional requirements: First, a party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Maciel*, 489 F.3d at 1023. Second, the determination of the issue must have been essential to the prior judgment. *Amadeo*, 290 at 1159.

Both *res judicata* and collateral estoppel are generally inappropriate where the prior judgment was a consent judgment. *Amadeo v. Principal Mutual Life Insurance Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002). The judgment may be preclusive, however, if the "parties intend[ed] their agreement to have such effect." *Arizona v. California*, 530 U.S. 392, 395-96 (2000); *see also Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 480-81 (9th Cir. 1991).

In the Ohio action, the Department of Labor was acting on behalf of employees (including plaintiffs) in order to recover their "personal economic loss" and "employee-specific rights." The issue concerning the calculation of the amount of overtime pay due to the plaintiffs is the same under the FLSA and the Washington MWA. The amount of back wages due to plaintiffs under the

FLSA was at issue in the prior litigation and the Department of Labor sought to enjoin the unlawful withholding of overtime wages due. The Ohio Consent Judgment covered the plaintiffs' overtime claims for the subject time period. The issue of the amount of overtime wages due to the plaintiffs was determined in the prior lawsuit. The Consent Judgment preserved for the employee plaintiffs future § 216(b) overtime claims, if and to the extent those claims were different than the violation alleged in the Secretary's Complaint in the Ohio action:

> Defendant agreed not to raise this Consent Judgment as a defense to a claim for unpaid overtime compensation in any action under section [2]16(b) of the act alleging violations of section 7 other than the violation alleged in paragraph V of the complaint filed in this action.

[Dkt. #39-2 at 22].

As for the application of federal law to plaintiffs' claims, this Court has previously ruled that it has no jurisdiction to review the judgment issued in the prior litigation, including the amount of overtime compensation found due to the plaintiffs. The federal court in the Northern District of Ohio applied the flexible work week method of calculating overtime pay due to these plaintiffs and seventy-eight (78) of their colleagues. [See Court's Order of April 22, 2009, Dkt. #27].

Defendant first argues that the plaintiffs' state law claims are barred by *res judicata*, because they are based on the identical violation alleged in paragraph V of the Secretary's Complaint in the Ohio action. In response, plaintiffs argue that even if the employees' § 216(b) claims are barred under *res judicata*, issues under Washington law were not covered in the Ohio judgment, and are not barred.

The Secretary is limited to seeking injunctive relief under 29 U.S.C. § 217. The Secretary can seek payment of back wages to affected employees in a § 217 claim, but cannot award liquidated damages or other relief to those employees. Such damages are recoverable under the

MWA.

Under § 217, the Secretary can sue only in a representative capacity. When doing so, the Secretary sues in the general public interest and not on behalf of the affected employees. *Bechtel Petroleum, Inc., v. Webster*, 646 F.Supp. 486. 500 (N.D. Cal. 1985), *aff'd and adopted*, 796 F.2d 252 (9th Cir. 1987). The purpose of an injunction to enjoin the withholding of wages due is "not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest." *Id*.

Employees affected by a judgment following a § 217 suit are not proper parties to the § 217 lawsuit. *Hodgson v. Katz & Besthoff, #38, Inc.*, 365 F.Supp. 1193, 1195 (W.D. La. 1973). The affected employees are not entitled to take part in the § 217 claim, nor are they entitled to notice of the claim. Claim preclusion thus cannot apply in this matter unless plaintiffs were in privity with the Secretary in the Northern District of Ohio litigation.

Plaintiffs had no notice of the lawsuit, nor an opportunity to participate in any way in the Ohio litigation, implicating plaintiffs' constitutional due process rights if *res judicata* prevents them from pursuing their state claims in this matter. *Richards v. Jefferson County*, 517 U.S. 793 (1996). The Secretary in the § 217 lawsuit was acting on behalf of the public to correct an offense against the public interest, not on behalf of the plaintiffs' individually. *Wirtz v. Jones*, 340 F.2d 901, 904-05 (5th Cir. 1965). The plaintiffs here can seek damages that the Secretary could not and did not recover in the § 217 matter.

Plaintiffs were not in privity with the Secretary in the underlying Ohio litigation, and for that reason plaintiffs' state law claims are not barred.

**2. Proper Calculation of Overtime Under State Law.**

Both the FLSA and MWA overtime provisions require an employer to pay time and one-half the regular rate of pay for all hours worked in a work week in excess of 40. 29 U.S.C. § 207

and RCW 49.46.130(1). Under the Washington Administrative Code, the term "regular rate" is determined "by dividing the amount of compensation received per week by the total number of hours worked during that week." WAC 296-128-550. Similarly, under the United States Department of Labor Wage and Hour regulations at 29 C.F.R. § 778.109, an employee's regular hourly rate of pay is determined "by dividing his total remuneration for employment (except statutory exclusions) in any work week by the total number of hours actually worked by him in that work week for which such compensation was paid." Therefore, "regular rate of pay" is the same under both the FLSA and the MWA. Plaintiffs' claims for overtime compensation under the FLSA and the Washington MWA are identical.

The Ohio District Court entered a judgment ordering payment of overtime using the flexible work week method. That judgment disposed of all claims under federal law but left open the question whether identical language under Washington law should be interpreted in the same manner as the Ohio Court interpreted federal law. There is no clear guidance from the Supreme Court on the subject and cases from different circuits seem to be split in cases with comparable or analogous circumstances. The Ninth Circuit has not weighed in on the issue.

First, the Court resolves the issue of preemption by determining that the CBA provision in question is clear and unambiguous. The parties intended to segment the wages earned by 12-hour shift employees using the flexible work week methodology. No further interpretation of the provision is necessary or possible. Because the interpretation of a CBA is not required, the state claims are not preempted in this case. *Lividas v. Bradshaw*, 512 U.S. 107, 125 (1994); *Cramer v. Consolidated Freightways, Inc.,* 225 F.3d 683, 691 (9th Cir. 2001). Defendant's Motion for Summary Judgment on the issue of preemption [Dkt. #39] is **DENIED.**

Next the Court must review the applicable regulation and the interpretive case law to determine whether Emerald is entitled to the employer-friendly flexible work week method of

calculating overtime pay under Washington state law.

Plaintiffs allege that the overtime compensation due to plaintiffs in the Ohio Consent Judgment was incorrectly calculated. The Department of Labor calculated the regular rate of pay as set forth in 29 C.F.R. § 778.109, determining that the overtime compensation due to plaintiffs was one-half the regular rate times the number of hours in excess of 40 in a work week. The federal court in Ohio, in calculating back wages, used the "fluctuating work week" method set forth in 29 C.F.R. § 778.114. This regulation allows overtime to be calculated at only half of the regular rate, rather than time and one-half the regular rate of pay under the FLSA and the MWA:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a work week whether few or many. Where the *clear mutual understanding* of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each work week, whatever the number, rather than for working 40 hours or some other fixed weekly work, such a salary arrangement is permitted by the act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those work weeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee as straight time rates for whatever hours are worked in the work week, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the work week into the amount of the salary to obtain the applicable hourly rate a week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirements because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. § 778.114(a) (emphasis added).

It is undisputed that using this method would not result in a hourly rate below the statutory minimum wage, nor is there any dispute that the number of hours plaintiffs worked each week fluctuated. The parties dispute whether the "clear mutual understanding" requirement extends

ORDER
Page - 11

only to being paid a fixed weekly salary regardless of the number of hours worked, or whether it also includes an understanding that plaintiffs will be paid overtime. Likewise, the parties disagree about whether the regulation also requires that the employee actually have been contemporaneously paid overtime.

There is no Ninth Circuit case law directly interpreting this aspect of the regulation. Plaintiffs direct the Court's attention to the district court decision in *Russell v. Wells Fargo & Co.,* 2009 WL 3861764 (N.D. Cal. 2009), while the defendant cites to *Tumulty v. FedEx Ground Package Sys., Inc.,* 2005 WL 1979104 (W.D. Wash). Plaintiffs argue that because Emerald was not paying its employees overtime contemporaneously throughout the period in dispute, it could have no clear understanding with the employees about overtime and the rate of overtime pay to be paid. Plaintiffs argue that because there is no "clear mutual understanding" and no contemporaneous overtime pay, the flexible work week methodology is not available to Emerald here.

Although the state law of Washington is identical to the FLSA regarding calculation of overtime using the flexible work week method, this Court must choose between two conflicting lines of federal decisions. One line of cases adopts a common sense approach that requires only that so long as the parties (employer and employee) reached a clear mutual understanding that while the employee's hours may vary, his salary will not, then the calculation of overtime pay in a subsequent action brought under the wage laws would be half-pay for each hour over 40 in a week. These courts did not require that the employee know that he would receive overtime compensation or have actually received it contemporaneously. *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assoc. Inc.,* 173 F.3d 35, 39-40 (1st Cir. 1999); *Blackman v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138 (5th Cir. 1988). If the Court follows this line of cases, the Ohio judgment will represent full compensation owed the plaintiffs and this case is at an end without

further payment to plaintiffs, beyond that which has already been tendered.

The second line of cases looks more closely at the language of the applicable regulation and requires both a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each work week <u>and</u> contemporaneous payment of overtime as earned.

Here, because Emerald did not pay plaintiffs any more for overtime hours (hours worked in excess of 40 hours each week) the flexible work week method of payment for overtime hours at half the regular rate would give way to the predominant rate of compensation at time-and-a-half. This approach has been adopted by District Courts around the country: *Russell v. Wells Fargo & Co.*, 2009 WL 3861764 (N.D. Cal.); *Scott v. OTS Inc.,* 2006 WL 870369, *12 (N.D. Ga.); *Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 58-62 (D.D.C. 2006); *Cowen v. Treetop Enters.*, 163 F.Supp.2d 930, 941 (M.D. Tenn. 2001); *Rainey v. Am. Forest & Paper Assoc.*, 26 F.Supp.2d 82, 99-102 (D.D.C. 1998). The Court's review of these cases, to include *Overnight Motor Transport Co. v. Missel*, 316 U.S. 572 (1942), and its consideration of the background and policy of the FLSA, convinces it that the flexible work week method cannot be used to calculate overtime retroactively (where it has not been paid contemporaneously with the overtime work) for the purposes of determining damages under Washington State law. The plaintiffs are entitled to pay at the rate of time-and-a-half for every hour of overtime time worked during the period of time covered by plaintiffs' claims.

Washington courts recognize the "persuasive authority" of the federal Fair Labor Standards Act and regulations promulgated pursuant to it when construing MWA provisions that are similar to those of the FLSA. *Inniss v. Tandy Corporation*, 141 Wash.2d 517, 524-25, 7 P.3d 807 (2000). Both the FLSA and the MWA authorize the use of the Flexible work week methodology. 29 C.F.R. § 778.114; WAC 296-128-550.

The Washington Supreme Court has expressly found that 29 C.F.R. § 778.114 provides guidance when determining the applicability of the flexible work week method under the MWA. *Inniss*, 141 Wash.2d at 524-25.

29 C.F.R. § 778.114(a) sets out five prerequisites for application of the flexible work week method. *Griffin v. Wake County*, 142 F.3d 712, 715 (4th Cir. 1998). The plain terms of 29 C.F.R. § 778.114(c) provide that unless "all the legal prerequisites" for applying the flexible work week method are present, an employer cannot avail itself of the flexible work week method for calculating overtime wages. In such cases where the flexible work week method cannot apply, the "statutory" method of multiplying the employee's regular hourly rate by 1.5 and then by the number of hours worked over 40 in each work week is the applicable overtime pay computation method.

One of the prerequisites under 29 C.F.R. § 778.114(a) for applying the flexible work week method is payment of the mandatory 50% overtime premium contemporaneously with payment of the employee's regular straight time pay. *Russell v. Wells Fargo & Co.,* 2009 Westlaw 3861764, at *3 (N.D. Cal. 2009). Defendant paid plaintiffs no wages at all for the hours for which plaintiffs seek recovery of unpaid overtime wages. Defendant therefore did not satisfy the contemporaneous overtime pay prerequisite of 29 C.F.R. § 778.114(a).

Another prerequisite for the flexible work week method of overtime calculation to apply is that the employer and employee must have reached a "clear mutual understanding" at the outset of their employment relationship that the employee's fixed salary would compensate the employee for all hours worked. *Griffin*, 142 F.3d at 715. This understanding must include an understanding that the employee will be compensated for his overtime work at a rate of 50% of his regular hourly rate. *Russell*, 2009 Westlaw 3861764, at *5.

The parties lacked the clear mutual understanding required by 29 C.F.R. § 778.114(a) as

evidenced by the fact that plaintiffs were paid nothing for the hours worked over 40 in various work weeks. If the employee receives no pay for overtime hours worked, the parties could not have understood that the employee was to be paid the requisite 50% overtime pay premium.

Defendant cannot avail itself of the flexible work week overtime pay computation method because two of the five prerequisites for application of that methodology were unsatisfied. The proper overtime pay computation method will be the statutory method described above.

### 3. Double Damages.

Plaintiffs seek summary judgment that plaintiffs are entitled to double damages under the MWA, while Defendant seeks summary judgment that they are not. To obtain double damages, plaintiffs have the burden of proving that Emerald wilfully and with intent to deprive them of their wages owed by statute, withheld or failed to pay wages. RCW 49.52.070.

The parties do not dispute that Emerald's pay practice, including the overtime calculations and pay owing for any alleged overtime work, were in compliance with Article 17A of the CBA. The parties also do not dispute that Emerald paid them according to the terms of the CBA. This pay practice was in place at the time Emerald acquired the plant from the predecessor employer.[1] And because it was negotiated and agreed to by plaintiffs' union representatives, Emerald could not unilaterally modify the terms of the CBA, including the pay practice provided for in Article 17A. Finally, Plaintiffs do not dispute that Emerald immediately self-reported the pay practice in

---

[1] This case presents the Court with several ironies. First, the plaintiffs (through their representatives) actively negotiated the CBA provision, while the defendant did not.

Second, if the CBA provision is ambiguous, plaintiffs' state law claims are pre-empted, and the Ohio Consent Judgment (adopting the fluctuating work week methodology) controls. If the commitment to flexible work week methodology is clear and unambiguous, however, there is no preemption and the Court is free to apply Washington law to the unique circumstances of this case.

Finally, while the Court cannot review the Ohio District Court decision, and its application of federal law, the Court must, of necessity, decide whether Washington state law -- using identical language -- would reach the same conclusion as the Department of Labor and the Ohio Court. This Court does, in fact, reach a different conclusion.

question to the Department of Labor upon discovering it, consented to judgment, and paid or tendered payment to the plaintiffs and other employees the amounts the Department of Labor determined were owed. There is no evidence that plaintiffs ever brought a challenge or asserted any union grievance based upon the agreed-to CBA practices. The failure to grieve, however, does not constitute knowing submission to a violation of federal or state wage laws.

A district court has discretion to decline to award double damages or to award less than double damages if the employer shows that it acted in subjective good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. Good faith is an honest intention to ascertain what the FLSA requires and to act in accordance with it. *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.,* 83 F.3d 292, 297 (9th Cir. 1966).

An employer does not wilfully withhold under RCW 49.52.070 if there is a "bona fide dispute" as to the obligation to pay. *Eberling v. Gove's Cove, Inc.,* 34 Wn. App. 49, 500-01, 633 P.2d 132, (1983). Such a dispute exists where the question of the employer's obligation to pay is "fairly debatable." *Schelling v. Radio Holdings, Inc.,* 136 Wn.2d 152, 161, 961 P.2d 371 (1998).

Although double damages are the norm and single damages are the exception, under the undisputed facts of this case, defendant did not wilfully withhold wages but acted reasonably in reporting its concerns about the pay provisions mandated in a CBA previously negotiated by its predecessor. Emerald acted in subjective good faith and had objectively reasonable grounds for believing its conduct did not violate federal law. Plaintiffs are not entitled to double damages under RCW 49.52.070.

**4.    Successor Liability.**

A corporation that purchases another corporation can be liable for claims that accrued during the time when the selling corporation owned the company under the "successor liability" theory. Successor liability can attach and bind the purchasing corporation if the buyer expressly or

impliedly agrees to assume liabilities of the seller. *Long v. Home Health Servs. of Puget Sound, Inc.,* 43 Wash.App. 729, 732, 719 P.2d 176 (1986).

The closing documents relating to the sale of the Kalama plant to defendant provide that "[a]t the Closing, Buyer shall assume and agree to fully pay, perform and discharge, as and when they become due, the Liabilities of Sellers...specifically set forth below...." The document then continued by stating that defendant assumed limited liability for all payroll matters relating to periods prior to the closing date that pertained to "transferred employees," which included plaintiffs.

The closing documents limited defendant's payroll liabilities to a certain amount, but expressly allowed defendant to seek indemnification from the seller if the liabilities exceeded the stated amount.

Defendant expressly assumed the liabilities of the seller relating to all payroll-related matters for periods prior to the closing date. Defendant therefore has successor liability regarding plaintiffs' claims in this matter.

Plaintiffs are entitled to recover damages dating back to three years from the filing date of the complaint in this matter. Plaintiff Monahan, however, may seek damages dating back to September 9, 2005 based on a tolling agreement into which the parties entered to that effect. The damages are limited to overtime pay at the rate of time-and-a-half for every hour worked by a plaintiff in excess of 40 hours per work week. No liquidated damages are awarded.

Accordingly, defendant's Motion for Summary Judgment on the basis of preemption of state law claims [Dkt. #31] is **DENIED**. Plaintiffs' Motion for Partial Summary Judgment [Dkt. #40] is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion for Summary Judgment regarding state law claims [Dkt. #39] is **GRANTED IN PART AND DENIED IN PART**. All other pending motion are **DENIED AS MOOT**. The Court will entertain a motion

for attorney fees allowed the plaintiffs pursuant to state law.

Dated this 25th day of February, 2010.

*Ronald B. Leighton*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE